NATIONAL SPUN SILK COMPANY, RESPONDENT, v. PEER-
LESS SILK MILLS CORPORATION, APPELLANT.

Argued February 16, 1921—Decided June 11, 1921.

1. Whether the payment for goods delivered in performance of a
contract to furnish a larger quantity amounts to an accord and
satisfaction, in a suit for damages resulting from a breach of the
contract, is to be determined from the facts in the case, and if
the evidence is conflicting the question is to be determined by the
jury. Therefore, when the facts necessary to establish an accord
and satisfaction are in dispute, the refusal of a motion to direct
that the accord is established is not error.
2. To establish a contract of accord and satisfaction based on the
acts of an agent of the party charged, it must appear that the
agent had authority to make the contract, or that his principal
ratified his act.

On appeal from the Passaic County Court of Common
Pleas.

Before GUMMERE, CHIEF JUSTICE, and Justice BERGEN.

For the appellant, *Hartshorne, Insley & Vreeland.*

For the respondent, *Horton & Hill* and *Charles G. Keutgen*
(of the New York bar).

The opinion of the court was delivered by

BERGEN, J. The plaintiff and defendant entered into a con-
tract by which the plaintiff agreed to sell, and the defendant
to buy, four thousand five hundred pounds of spun silk de-
scribed in the contract as "R. B." at the price of $12.50, and
four thousand five hundred pounds described as "W. R." at
$10.25 a pound. After a portion was delivered the defendant
refused to receive the balance, claiming that it was not up to
sample, and entered into negotiations with the plaintiff to
have it recall deliveries amounting to about $10,000 and to
accept $4,000 in payment for the balance retained. This offer

the plaintiff refused and brought suit for the amount delivered, and also for damages resulting from refusal to accept the balance of the silk contracted for. After the suit was brought defendant sent a check for the amount of silk delivered, amounting to $14,291.06, represented by eight invoices. The defendant testified that this check was sent after the suit was brought in pursuance of a conversation with the plaintiff in which defendant said he would send the check in settlement, and that the plaintiff replied, "If you send a check for $14,000 we will call the matter off." This the plaintiff denied, so that whether such agreement was made became a jury question. Written on the check was the following: "In full payment of all accounts and claims to date," and on the margin partly written and printed, "Endorsement of the check by payee constitutes receipt in full for the following account," and written below this was an itemized statement of the date of each invoice and the amount, the total sum being the same as the check. The plaintiff recovered damages for the refusal of the defendant to accept the balance of the silk sold. It appeared in the case that after refusal to accept the residue a further shipment was made which the defendant refused to accept, and returned it to the plaintiff, and on May 3d, 1920, wrote plaintiff not to ship any more spun silk until further instructed. The defendant appeals and urges the following errors:

1. That it was error to refuse to direct a verdict for the defendant on the ground that there had been an accord and satisfaction of the cause of action sued on. The only evidence to justify this request was the disputed statement that the plaintiff agreed that if defendant would send a check for $14,000 plaintiff would call the matter off. The defendant also urges that the receipt and endorsement of the check was conclusive proof of an accord and satisfaction. There are two objections to this, one is that the check never came to the knowledge of the plaintiff. It was received by plaintiff's clerks in the regular course of business and by them deposited to the credit of the plaintiff, and it is not pretended that they had any express authority to commit the plaintiff, by any ac-

tion of theirs, to an accord and satisfaction. And the second is, that "whether a tender is accompanied by such acts and declarations as are necessary on its acceptance to constitute an accord and satisfaction, must, of course, be determined from the facts in each particular case. If the evidence is conflicting, the question is to be determined by a jury." *Rose* v. *American Paper Co.*, 83 *N. J. L.* 707. The check on its face stated the claims and demands for which it was given, and, primarily, the statement that it was in payment of all accounts and claims to date would appear to apply to accounts and claims set out on the margin of the check, and whether it applied to any other accounts or claims would require explanation, and whether it was intended by the parties to be an accord and satisfaction was a jury question, and it would have been error for the trial court to direct a verdict for the defendant upon the ground of accord and satisfaction.

2. That, after referring to evidence tending to show that the clerks of plaintiff who received and deposited the check claimed to have been given and accepted as an accord and satisfaction, had no authority to make such a contract for the plaintiff, the court charged the jury: "Now, if the money was paid without any knowledge on the part of any person in authority in the plaintiff's company and accepted it in satisfaction of the debt, why it would not amount in law to accord and satisfaction." The rule of law on this subject is well stated in 1 *R. C. L.* 181, as follows: "It is an elementary principle, as in case of other contracts, that when a contract of accord and satisfaction is entered into by an alleged agent of a creditor on behalf of his principal, in order to bind the principal, the agent must have been authorized to enter into the contract or his act must have been ratified by the principal." This rule justifies that portion of the charge to which exception was taken.

3. That the charge did not correctly state the rule of law, for it left to the jury the determination of the question whether the check was paid with notice that it was in satisfaction of the entire debt, when in fact the check had written on its face the statement that it was in full satisfaction of all

accounts and claims to date. The answer to this objection is, that the check on its face had a written statement of the debts and claims in satisfaction of which the check was given, and whether it was accepted as an accord and satisfaction and thereby became a contract was a jury question.

4. That the court should have admitted in evidence copies of a newspaper entitled "Women's Wear." This paper contained a list of the current prices of spun silk, but there was no proof as to the verity of the quotations, nor of the method used to ascertain market prices, or whether the quotations were from actual sales or otherwise. The Court of Errors and Appeals, in *Horst Co.* v. *Peter Breidt City Brewery,* 94 *N. J. L.* 230, said: "The credit to be given the paper must depend upon some such extrinsic proof."

5. That there was error in refusing a nonsuit on the ground that no breach of the contract had been shown. The evidence was sufficient to justify the jury in inferring that when the defendant notified the plaintiff by a letter dated May 3d, 1920, not to ship any more silk until further instructed, and returned a shipment put in transit by plaintiff on May 5th, that it would be useless for the plaintiff to ship any more goods, at least until it was further instructed, and that no such instructions were ever given.

6. That the court permitted the plaintiff's witness to explain the meaning of the letters "W. R." and "R. B.," and to state the kind and quality of silk described by those letters, and refused to allow the defendant to prove what was said to its president when the contract was made as to the meaning of the initials, the question being: "*Q.* Did Mr. Hinsberg or the plaintiff make any statement to you at or before you entered into this contract concerning the quality of the spun silk that you purchased from the plaintiff?" The plaintiff's witness did not testify as to the kind and quality of the silk described by those letters  All he said was that spun silk described by those letters was ordinarily a regular marketable commodity. The sale was made by the use of those letters as descriptive of the character of the goods to be sold, and the defendant entered into the contract without requiring any

condition as to the character of the goods thus described, and we think it must be assumed that he understood what the letters meant, and that they implied marketability.

7. The trial court was requested by defendant to charge three requests which, in substance, were that the fact that the contract was in writing did not prevent the raising of an implied warranty of fitness for the purpose for which they were sold if such purpose was known to the seller. These requests were refused. The court charged that "it was the duty of the plaintiff to deliver the kind or kinds of silk contained in the contract, and there was an implied contract that it was to be a merchantable spun silk." This covers so much of the requests as the defendant was entitled to.

8. That the plaintiff's excuse for failure to deliver or tender spun silk after May 5th (for failure of which it was contended there should have been a nonsuit) was based on a sentence contained in the letter of May 3d, and defendant was refused an opportunity to explain what he meant by the words used. This was properly overruled because the plaintiff acted on the letter, and on the refusal of the defendant to receive more shipments. What the defendant intended which was not expressed in the letter would not bind the plaintiff.

9. That the court charged the jury, on request of the plaintiff, "There was no evidence from which the jury could find any agreement to rescind the contract." The appellant objects to this because the plaintiff took back the refused shipment; that there was talk of a compromise; and that plaintiff said it would take the matter under advisement. We do not see anything in this to justify any inference that there was agreement to rescind. It might have been in the mind of the defendant, but there is no evidence from which it may be inferred that the plaintiff agreed to this.

Finding no error in the record the judgment will be affirmed, with costs.